Larkin, J.
This case raises questions concerning the correctness of a trial judge’s action in holding a third party defendant legally responsible for damages (including punitive damages awarded pursuant to M.G.L. c. 93A), in a trial context, where the third party plaintiff (original defendant) neither alleged a claim for punitive damages nor asserted claims of a “willful violation” against the third party defendant until the close of the trial in the direct action with the plaintiff.
The facts of record which generated this issue are as follows:
The plaintiffs, Erwin T. and Erma S. Kilgore, brought an action against defendant, R. J. Grosso Enteprises, Inc. to recover monetary damages for asserted violations of M.G.L. c. 93A and for breach of contract, negligence, intentional infliction of emotional harm and for deceit and fraud.
The defendant, R. J. Grosso, (hereinafter "Grosso”) denied liability and in its answer alleged that Grosso had performed according to its contract and that any damages allegedly caused were the fault of persons for whose conduct Grosso was not legally responsible.
In addition, the defendant Grosso commenced a third party action against Season-All Industries. Inc., third party defendant, (hereinafter “Season-All”) alleging in the original third party complaint that if plaintiffs were injured as *52 alleged then it was the deception, breach of contract of the manufacturer and third party defendant Season-All that caused plaintiffs’ injuries. At the close of trial, the Court found for the plaintiffs in the direct action against the defendant R. J. Grosso, Inc. as follows:
Count I - 93A — Finding for plaintiffs in the amount of $4,356 doubled to $8,712 plus interest and costs, plus attorneys’ fees of $2,500.
Count II - Breach of Contract — Finding for plaintiffs, damages $4,356 plus interest and cost.
Count III - Negligence — Finding for defendant.
Count IV - Intentional Infliction of Kmotional Distress — Finding for the defendant.
Count V - Deceit and Fraud — Finding for plaintiff, damages — $4,356 plus interest and costs.
Plaintiff is limited to one recovery on one count only.
On defendant’s, third party plaintiffs, claim against Season-All, the Court found for defendant, third party plaintiff, Grosso and awarded in an amount of $8,712, plus costs, interest and attorneys’ fees of $2,500.
The Report discloses that at the trial there was evidence tending to show that the plaintiffs were the owners of a home at 160 Main St., Northfield, Massachusetts. Sometime in 1981 they contacted Grosso seeking the installation of some replacement windows for their home. These windows were installed, the product and service was satisfactory, and, again, in the summer of 1983 the plaintiffs again contacted Gross, this time through a sales representative, for the further purchase of replacement windows, and signed an agreement for the installation of four replacement windows at their home. The agreement was signed with Grosso August 12,1983 and called for a total contract price of $2,046.70. Thereafter, the windows were installed on October 27,1983. From the outset, the record reflects that the plaintiffs had problems with the windows in their functioning and repeatedly called and complained to Grosso that the windows were defective. Among their complaints, plaintiffs asserted that the windows would not open as described “for easy cleaning”, frequently would not open and close at all, frequently got stuck, and had gaps and openings that allowed cold air and small bugs and insects to enter the house.
As a result of these complaints, representatives of the defendant Grosso came to plaintiffs home on December 20, 1983 and replaced the window sashes on two of the windows. However, plaintiffs testified that this did not correct any of the complaints they had previously made and they continued to have difficulties with the windows.
Thereafter plaintiff Mrs. Kilgore continued to call and complain to Grosso and finally after several telephone calls, a representative of Grosso came to plaintiffs’ home on May 7,1984 to adjust the windows. However, this work also proved unsatisfactory to the plaintiffs and they continued to complain of the same difficulties. On December 11, 1984, another representative of Grosso came to plaintiffs premises and advised the plaintiffs that the problem was that the windows were defective as a result of the fault of the manufacturer, (third party defendant) Season-All and that Grosso could do nothing further to satisfy their complaints. Plaintiffs heard nothing further from defendant Grosso after December of 1984.
The record further reflects that as a result of this colloquy, and nothing else having been done to satisfy the complaints of the Kilgores, in March 1985 they *53 contacted another contractor, Cooke & Jones, Inc., and received an estimate to have the four windows removed and replaced with a different brand of windows. This work was done. The cost of this work was $4,356 which the plaintiffs paid to Cooke & Jones.
At trial, there was testimony from the contractor who replaced the Grosso installed windows that the original windows had been improperly installed and not installed in a good workmanlike manner. There was also testimony that the window, as originally manufactured by Season-All, contained a design defect which would cause the glass to become loose and result in the sashes becoming “bowed” which would result in the window being out of “plumb” —with the resultant difficulty in opening and closing the windows.
The defendant, R. J. Grosso, Inc., was an authorized distributor authorized to sell the so-called “Thermal-Guard” windows, which were manufactured by Season-All. However, at all times material, Grosso was an independent contractor and not an agent, servant or employee of third party defendant Season-All. There was further evidence that in April, May and June of 1983, Grosso started to receive field reports that some of the Season-All windows were experiencing a “bowing” problem in the sash and that Season-All itself was receiving field complaints from various distributors.
As a result, Season-All, in July 1983, sent out a “mailgram” to all of its distributors, advising them that they had discovered this manufacturing defect in windows that were in the field and that the problem could be corrected by taking certain prescribed measures — essentially by correcting an “extrusion” problem in subsequent production runs.
The record further reflects that when Grosso entered into the contractual agreement with the plaintiffs in August of 1983, it was aware of and knew that Season-All was having a problem with the top sash and interlock rail of their windows manufactured prior to the mailgram in July of 1983. There was further evidence that “this top sash interlock rail problem” which Season-All was experiencing with the window was not resolved by the production solution mentioned in the July 20, 1983 mailgram and that the problems continued throughout the summer and fall of 1983. As a result, Season-All advised all of its distributors including the defendant Grosso that it would replace at its expense any defective windows containing this defect and ultimately agreed to reimburse its distributors including the defendant Grosso for labor costs up to $50 per window for the costs of replacement of any windows found to be defective due to this manufacturing problem. There was further evidence that, in December of 1983, Grosso did, in fact, appear at plaintiffs premises and replace two of the sashes and two of the windows that were bowed which replacement parts had been supplied by Season-All at Season-All’s expense. However, as noted above, thereafter nothing meaningful was done to correct plaintiffs problems, and, other than the replacement of the two sashes, Grosso did nothing further to replace any of the other windows in plaintiffs home.
At the close of the trial and before the final arguments the third party defendant made the following request for rulings which the Court ruled on as follows:
1. The evidence does not warrant a finding that the defendant and third party plaintiff, R. J. Grosso Enterprises, was an agent, servant, or employee of the third party defendant, Season-All Industries, Inc. Ruling: Denied — see findings of facts.
2. The evidence requires a finding as a matter of law that at all times material to this action the defendant and third party plaintiff, *54 R. J. Grosso Enterprises, was an independent contractor in its' relationship with both the plaintiffs and the third party defendant, Season-All Industries, Inc. Ruling: Allowed.
3. The evidence does not warrant a finding that the third party defendant, Season-All Industries, Inc., engaged in any unfair and deceptive trade practices. Ruling: Denied — see findings of fact.
4. The evidence does not warrant a finding that the third party defendant, Season-All Industries, Inc., was negligent. Ruling: Denied — see findings of fact.
5. The evidence does not warrant a finding that the third party defendant, Season-All Industries, .Inc.’s negligence, if any, was a proximate cause of any damages sustained by the plaintiff as alleged in the complaint. Ruling: Denied — see findings of fact.
6. The evidence does not warrant a finding that the third party defendant, Season-All Industries, Inc. breached its implied warranty of merchantability. Ruling: Denied — see findings of fact.
7. The evidence requires a finding that the warranty liability, if any, of the third party defendant, Season-All Industries, Inc., is limited to the terms of the limited warranty it gave to the plaintiff pursuant to the written limited warranty issued by the third party defendant to the plaintiff. Ruling: Denied — see findings of fact.
8. The evidence warrants a finding that the plaintiffs’ damages, if any, were as the result of the negligence on the part of the defendant, R. J. Grosso Enterprises, in improperly, negligently and carelessly installing the windows on the plaintiffs’ premises as distinguished from any inherent manufacturing defect in the windows. Ruling: Denied — see findings of fact.
The Court made the following findings of fact:
This is an action brought by plaintiffs, Mr. and Mrs. Kilgore, against R. J. Grosso Enterprises, Inc. for 93A violation, breach of contract, negligence, intentional infliction of emotional harm and for deceit and fraud.
The defendants deny liability and answer that they have performed according to their contract and that any damages allegedly caused were the fault of persons for whose conduct the defendant is not legally responsible.
The defendant further brought a third party complaint against Season-All Industries, Inc., third party defendants, alleging that if the plaintiffs were injured as alleged, then it was the deception, breach of contract of the manufacturer and third party defendant, Season-All Industries, Inc., that caused said injuries.
From the testimony of the various parties and witnesses, documents, pictures and other exhibits, I make the following general findings of fact.
Mr. and Mrs. Kilgore owned their home at 160 Main Street, Northfield, Massachusetts. That sometime in 1981 they contacted the defendant, R. J. Grosso Enterprises, Inc., for the installation of some replacement windows. The windows were installed, the product and service were satisfactory and again in the summer of 1983 the plaintiffs contacted the defendant through a sales representative, a Mr. Vic Kowalski, and signed an agreement for the installation of four replacement windows at their home at 160 Main Street, Northfield, Massachusetts. The agreement signed on August 12,1983 called for a total contract price of $2,046.70 with R. J. Grosso, Inc. The windows were installed October 27,1983. Mrs. Kilgore repeatedly called and complained to R. J. Grosso that these windows were defective — that they would not open as described for easy cleaning, would not open and close, got stuck, had gaps and *55 openings that allowed cold air and small bugs and insects to enter the house.
Representatives of R. J. Grosso came on December 20,1983 and replaced the window sashes on two of the windows, but this didn’t make any improvement according to the Kilgores.
Mrs. Kilgore continued to call and complain to the Grosso Company and finally after perhaps 20 telephone calls a representative came on May 7,1984 to adjust the windows. This work was also unsatisfactory to the Kilgores and they kept complaining. On December 11,1984, a Mr. Donald Chretien from R. J. Grosso came and informed the Kilgores that the problem was defective windows from Season-All Industries or Therma Guard, the manufacturer of this window.
Nothing else was done to satisfy the complaints of the Kilgores and in March 1985 they contacted Cooke & Jones, Inc. and received an estimate to have the four windows removed and replaced with Pella windows. They made arrangements with Cooke & Jones and they removed the replacement windows installed by R. J. Grosso, Inc. and replaced them with Pella windows.
The cost of this work was $4,356.00 which the Kilgores paid Cooke & Jones.
There was testimony that as early as April, May and June, 1983, R. J. Grosso, Inc. had received defective windows from Season-All Industries, Inc. and had contacted them concerning the defective windows. There was evidence that Season-All was aware of the problems with the top sash and interlock rail of their manufactured windows prior to July, 1983 and that production after July 20, 1983 would solve the problem. It later turned out that this problem was not solved by the July 20th production solution.
There was evidence that R. J. Grosso knew or should have known of the defective windows prior to their sale to the Kilgores.
There was testimony by witnesses that the windows installed by R. J. Grosso were installed negligently or installed in an unworkmanlike manner. That the windows were not plumb, square of level, nor properly shimmed and balanced. There was further evidence that the replacement windows themselves were defective in that the sashes were not properly manufactured and that the sashes bowed and the glass became loose and out of plumb.
Based on all the testimony, evidence, exhibits and pictures, I make the following special findings of fact:
1. A valid contract for the installation of four (4) replacement windows between R. J. Grosso, Inc. and Erwin and Erma Kilgore, dated August 12,1983 for a total price of $2,046.70 was executed.
2. That the Kilgores paid only $1,750.00 on said contract.
3. That the installation of the replacement windows by R. J. Grosso, Inc. was not done in a workmanlike manner.
4. That R. J. Grosso, Inc. knew that the replacement windows being supplied by Season-All Industries, Inc. were defective before sale of the windows to the Kilgores on August 12,1983.
5. That R. J. Grosso, Inc. and Season-All Industries, Inc. had correspondence about the defective windows and negotiations on how to remedy the various problems encountered.
6. That R. J. Grosso, Inc. ignored the complaints of the Kilgores and made no reasonable attempt to correct their problems with the faulty windows and faulty installation.
7. That R. J. Grosso, Inc. breached its contract with the plaintiffs, the Kilgores.
8. That R. J. Grosso, Inc. was guilty of an unfair and deceptive practice in selling the defective windows to the Kilgores without any *56 notice of the problems that could be encountered in violation of 93A — and said conduct was willful and deliberate.
9. That the Kilgores did not suffer any emotional distress nor did R. J. Grosso’s Inc. conduct amount to intentional infliction of emotional distress.
10. That R. J. Grosso was guilty of deceit and fraud by knowingly installing defective windows in the Kilgore residence.
11. That Season-All Industries, Inc. supplied R. J. Grosso knowingly with defectively manufactured windows for sale and installation in breach of their warranty of merchantability.
12. That Season-All Industries, Inc. is legally responsible for the damages incurred by R. J. Grosso in connection with their suit and liability to the Kilgores.
Damages are assessed — Kilgore v. R. J. Grosso, Inc.
Count I - 93A — Finding for plaintiffs $4,356; double to $8,712 plus interest and costs, plus attorneys’ fees of $2,500.
Count II - Breach of Contract — Finding for plaintiff; damages — $4,356 costs and interest.
Count III - Negligence — Finding for defendant.
Count IV - Intentional Infliction of Emotional Distress — Finding for defendant.
CountV — Finding for plaintiff; damages — $4,356 plus costs and interest.
Plaintiff is limited to one recovery on one count only.
On defendant, third party plaintiffs claim against Season-All Industries, Inc., third party defendant, the Court finds for
Defendant, third party plaintiff, R. J. Grosso, Inc.
Damages assessed — $8,712 plus costs and interest and attorneys’ fees of $2,500 all as provided in Count I of claim of Erwin T. and Erma S. Kilgore v. R. J. Grosso, Inc., R. J. Grosso Enterprises, Inc.
As a result of the Court’s special findings and ultimate finding, holding Season-All the third party defendant legally responsible for the entire damages, including the punitive damages under Chapter 93A awarded plaintiffs as a result of defendant Grosso’s conduct, Season-All filed a motion subsequent to receipt of the Court’s findings of fact and judgment to alter and amend findings and judgment or for new trial. The motion was set for hearing before the Court and argued on April 23,1986. At that same time, defendant and third party plaintiff Grosso filed a motion to amend its third party complaint to conform to the evidence which the third party defendant objected to and which motion was allowed by the Court on April 29,1986.
The present appeal followed.
On this appeal, counsel for Grosso has argued in its brief, and at oral arguments, that the total evidence of record did not warrant the trial court’s finding — and resultant award of two times the actual damages sustained by the plaintiff (in addition to costs, interest and attorneys’ fees) for the plaintiff. In effect, it is claimed that this determination is not supported by the record. Our review of the entire record satisfies us that there was sufficient evidence to permit this finding by the trial judge. We turn, then, immediately to the claim of counsel for Season-All that the trial court, given the pleading, procedural and evidentiary posture of the case, committed error in holding the third party defendant legally responsible for the conceded damages to plaintiff caused by Grosso’s wrongful conduct, particularly the punitive damages for Grosso’s willful and knowing violation of M.G.L. c. 93A violations. Accordingly, the *57 central issue of this appeal is whether the trial court incorrectly applied M.G.L. c. 93A in holding the third party defendant Season-All completely legally responsible for the third party plaintiff Grosso’s damages, in the context of explicit findings by the trial court that Grosso had knowingly installed putatively defective windows manufactured by Season-All in an unworkman-like manner. The essence of the Season-All position is that liablity for 93A violations should be imposed according to the relative culpability of the individual defendant — not by indiscriminate wholesale imputations of residual and vicarious liability overtones. In short, Season-All argues that in this type of case, a court is required to make a particularized assessment of the relative culpability of all of the defendants, even though doctrinal arguments can be adduced in favor of the “cleaner” or more “symmetrical” rules of liability, not to mentón less complex radiations of adjudicatory manageability, deriving from the result reached by the trial court here.
The standard for review of a judge’s findings and assessment of punitive damages under c. 93A is set forth in Mass. R. Civ. P. 52(a). Under this Rule, a judge’s finding should not be set aside unless they are “clearly erroneous.” Simon v. Weymouth Agricultural & Industrial Society, 389 Mass. 146, 148 (1983); Page v. Frazier, 388 Mass. 55, 61 (1983); Kenney v. Rust, 17 Mass.App. Ct. 699, 706 (1984). This standard applies to both findings of subsidiary facts, and ultimate findings. Page v. Frazier, Id. at 61. Where, however, as is contended here by Season-All, the trial judge’s ultimate findings are inconsistent with his subsidiary findings, a review court is free to set aside the ultimate findings. Simon v. Weymouth, supra at 148-149 (citing Colby v. Callahan, 311 Mass. 727, 729 (1942)). As always, the touchstone in this area is a determination that:
(a) finding is “clearly erroneous” when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
C.C.I.T. Construction Co. v. Coleman Bros., 8 Mass. App. Ct. 133, 134 (1979) (citing United States v. United States Gypsum Co., 333 U.S. 364, 395(1948)). See, Geraci v. Crown Chevrolet, Inc., 15 Mass. App. Ct. 935, 936 (1983); Century Insurance, A Mutual Co. v. First Firnstein, 14 Mass. App. Ct. 706, 708 (1982). Moreover, it has been held that there is a distinction to be drawn between subsidiary findings of fact and the resulting inferences to be drawn therefrom. With regard to the latter, in appropriate cases, an Appellate Court is free to draw its own inferences from the basic facts found. This proposition has been articulated in Hobbs Brook Agency, Inc. v. North Rivers Insurance Co., 7 Mass. App. Ct. 885 (1979), where the Court stated:
In reviewing the Trial Judge’s ultimate conclusions, it is our duty to draw our own inferences and reach our own conclusions. We may make our own findings of fact where the Judge made none. However, subsidiary findings of fact will not be set aside unless clearly erroneous. Similarly, ‘inferences from the basic facts ... are open for our decision, and inferences drawn by the Trial Judge are entitled to no weight in this Court.’
Sanguietti v. Nantucket Construction Co., 5 Mass. App. Ct. 227, 228 (1977). Moreover, where documentary evidence plays a significant role in the case, such as the mailgram in the instant case, since the Trial Judge’s opportunity at trial to appraise documents is no better than that of an Appellate Court, we have a greater latitude in drawing our own conclusions from the entire evidentiary complex. Guempel v. Great American Insurance Co., 11 Mass. App. Ct. 845, 848 (1981).
*58 In the present case, focusing on the original pleadings prior to post-trial amendments, neither the original plaintiffs nor the defendant (and third party plaintiff Grosso ever asserted a c. 93A claim against the third party defendant, Season-All. As such, the kind of “notice”[2] required by §9 of c. 93A was never given to Season-All either by the plaintiffs, or by Grosso. Moreover, in the original third party complaint, the defendant, Grosso, never pleaded or alleged a c. 93A violation as having been committed by Season-All relative to Grosso Enterprises, Inc. which would permit them to seek either contribution or indemnification.
As pointed out by counsel for Season-All, the only plausible legal theories pleaded in the original third party complaint — the complaint upon which the trial was conducted as against Season-All — were “deception, breach of contract of the manufacturer and third party defendant, Season-All Industries, Inc., that caused (plaintiffs’) injuries.”
Consequently, it may be persuasively argued that the issues as framed by the original pleadings only required Season-All to defend against what apparently were intended to be allegations of common law fraud and deceit and breach of contract. However, again, no where in the original third party complaint did Grosso assert c. 93A violations or allege that Season-All engaged in any unfair and deceptive practices in violation of c. 93A. Moreover, there was no evidence of any contract of indemnification between Season-All and Grosso with reference to the Season-All sale of the subject windows to Grosso — the windows which ultimately were installed in the plaintiffs’ home. As noted above, the trial court, in its findings on the evidence found that the plaintiffs’ damages were caused by, among other things, the following: (a) “that the installation of the replacement windows by R. J. Grosso Enterprises, Inc. was not done in a workmanlike manner”; (b) that R. J. Grosso Enterprises, Inc. knew that the replacement windows being supplied by Season-All Industries, Inc. were defective before the sale of windows to the Kilgores; (c) that R. J. Grosso Enterprises, Inc. ignored the complaints of the Kilgores and made no reasonable attempt to correct their problems with the faulty windows and faulty installation; (d) that R. J. Grosso Enterprises, Inc. breached its contract with the plaintiffs, the Kilgores; (e) “that R. J. Grosso Enterprises, Inc. was guilty of unfair and deceptive practice of selling the defective windows to the Kilgores without any notice of the problems that could be encountered in violation of c. 93A — and said conduct was willful and deliberate”; and (f) “that R. J. Grosso Enterprises, Inc. is guilty of deceit and fraud by knowingly installing defective windows in the Kilgore residence.”
However, notwithstanding the absence of an indemnification agreement, and the foregoing explicit findings of culpability byGrosso, many ofwhich are obvious intentional acts of wrongdoing, the Court ultimately held Season-All responsible, in effect, for all of plaintiffs’ damages occasioned by Grosso, an action which, in effect, allowed Grosso to recover the entire amount of damages assessed against them in the plaintiffs’ action as against the third party defendant, Season-All.
*59 Yet, paradoxically, the only finding of liability made by the trial judge with reference to Season-All was Finding No. 11 to the effect that Season-All sold Grosso defectively manufactured windows in breach of the warranty or merchantability — conceptually, a non-intentional basis of liability. On this point, the evidence is at least ambiguous as to whether Season-All willfully and knowingly breached its implied warranty of merchantability. For example, the record discloses that after Season-All was made aware of the defect in the windows, it apparently notified all of its distributors about the problem and, after the anticipated corrective measures did not rectify the situation, in the fall of 1983, Season-All agreed with its distributors, including Grosso, that it would replace and pay for labor of replacement of any defective windows such as those received by the Kilgores. Notwithstanding this offer, there is evidence to support the trial court’s conclusion that Grosso did little to take ultimately corrective measures at the plaintiffs’ premises. Consequently, without at least a hearing on the relative culpability of the parties, it is difficult to see how Season-All can be held liable under a blanket imputation of liability for the willful and deliberate unfair and deceptive practices engaged in by Grosso in violation of c. 93A, or for the knowing fraud and deceit of Grosso practiced upon the plaintiffs or for Grosso’s improper workmanlike installation of the windows. And, the short answer for this conclusion is that there is little evidence that Season-All also engaged in such conduct in a willful and knowing manner as against either the plaintiffs or against the third party plaintiff, Grosso. Yet, as counsel for Season-All correctly points out, that is the practical effect of the court’s ultimate findings and judgment assessing the total damages against Season-All and permitting Grosso “in effect to walk away from this action without having to pay any damages whatsoever, irrespective of its deliberate ‘unfair and deceptive’ practices.”
A review of the record indicates clearly that Season-All is, in effect, being asked to pay the punitive damages and attorneys’ fees as a result of the deliberate violation of c. 93A committed by Grosso Enterprises, and yet, it has long been held in the Commonwealth that punitive damages may be awarded only by statute. Boot Mills v. Boston & Maine Railroad, 218 Mass. 582 (1914). While M.G.L. c. 93A clearly provides for multiple damages under limited circumstances, neither the purpose of such provision or the prequisites to imposition of multiple damages have been met in the instant case wth respect to Season-All. As seen above, there is little or no evidence that Season-All engaged in any willful or knowing violation of c. 93A nor more significantly, is there any finding to that effect.
Moreover, it is now well settled that the multiple damage provisions of c. 93 A are designed to impose a penalty that varies with the culpability of the wrongdoer. International Fidelity Insurance Co. v. Wilson, 387 Mass. 841, 856 (1983). See also Heller v. Silverbranch Construction Corp., 376 Mass. 621, 627-628 (1978), Linthicum v. Archambault, 379 Mass. 381, 388 (1979).
An analysis of the foregoing decisions, interpreting the statute, demonstrates in effect that two classes of defendants are created under c. 93A. The first class consists of those defendants who although they have committed unfair and deceptive practices have engaged in relatively innocent violations and are not, therefore, liable for multiple damages. International Fidelity Insurance Co. v. Wilson, supra, at 853. The second class consists of those defendants who have committed “willful and knowing” violations and, depending upon the egregiousness of such a defendant’s conduct, the court may proceed to assess double or treble damages. Id. In short, the major, if sometimes inarticulate premise of all of these decisions, is that the culpability of each defendant governs the *60 amount of damages that may be assessed against them and the double or treble damages provision is, in effect, an award of punitive damages and the courts have treated it as such. In other words, we read these cases to mean that a non-willful and knowing violation of c. 93A cannot, in a third party action, automatically be held legally responsible for the willful and knowing c. 93 A violations committed by another. There is, in effect, no per se indemnification for the punitive damages assessed under c. 93A by one defendant as a third party plaintiff as against another third party defendant unless there is an independent basis upon which to find that culpability.
There are additional reasons for our conclusion that the trial court committed error in holding the third party defendant automatically liable for punitive damages.
In our view, the absence of any assertion of c. 93A allegations against Season-All serves to thwart the second and often stated goal of c. 93A to promote reasonable settlement offers. International Fidelity Insurance Co. v. Wilson, supra at 857. The stated and avowed purpose of the thirty day notice requirement is to permit the alleged wrongdoer an opportunity to resolve the “unfair and deceptive practices” asserted by making a reasonable offer and compromise of the claim. The statute clearly permits a violator of c. 93A, willful or otherwise, the opportunity to limit their liability by making reasonable settlement offers. Obviously, however, Season-All which had never been charged with a c. 93A violation, or received any such notification, had no such opportunity to mount a damage control action. Yet, paradoxically, at the end of the trial, it is asked to assume all of the damages plaintiffs recovered against Grosso for Grosso’s deliberated and willful violation of c. 93 A. It is clear under § 9(3) of c. 93A that the notice is specifically required of a plaintiff by way of a demand letter, whose dual purpose is to encourage negotiation and settlement by notifying prospective defendants of claims and also to operate as a control on the amount the claiming party can ultimately recover. It is, in effect, a condition precedent to maintenance of the action. Slaney v. Westwood Auto, Inc., 366 Mass. 688 (1975). Suit pursuant to c. 93A, §9, is precluded in the absence of such a demand letter. Entrigalo v. Twin City Dodge, Inc., 368 Mass. 812 (1975).
Clearly, in the instant case, plaintiffs, the Kilgores, having never given a §9 demand letter to Season-All Industries, Inc., could not maintain an action directly against Season-All Industries, Inc. for c. 93A violations. However, the trial court by the ultimate finding is permitting Grosso to do indirectly what the plaintiffs could not do directly by holding Season-All liable for Grosso’s c. 93 A violations. In our view, this is the fatal flaw in the Court’s ultimate decision in holding Season-All Industries, Inc. legally liable for R. J. Grosso’s wrongful conduct and resultant damages to the plaintiffs.
In summary, then, we agree with Counsel for Season-All that the law does not permit defacto indemnification for the deliberate, willful and wrongful violation of c. 93A committed by another if that party played no part in such willful and knowing unfair and deceptive practices engaged in by the other.
Accordingly, error being found, the Court’s ultimate findings entering judgment for the third party plaintiff as against Season-All should be set aside and the Case returned to the trial court for further proceedings not inconsistent with this Opinion. It is so ordered.

 We recognize that the method of giving notice turns on whether the plaintiff is a “consumer” or businessman. See G.L. c. 93A, § 9, § 11. According to §9 only consumers are required to send a formal “demand letter” 30 days prior to filing of a complaint. Nader v. Citron, 372 Mass. 96, 101 (1977). A businessman suing pursuant to § 11 only has to allege in the complaint that the defendant committed a c. 93A violation. See Marcil v. John Deere Industrial Equipment Co., 9 Mass. Appt. Ct. 625, 628-629(1980). Since Grosso, as a business operation, fell within §11, it technically was not required to send Season-All a 30 day demand letter. However, as stated above, Grosso, nonetheless, clearly violated the notice noliev of the Statute by failing to assert in its original complaint against Season-All a 93A violation.